IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Gregory Culler, Kimberly Osborne, Angonetha Singleton, and Margaret Greene, | ) ) ) ) | C/A No. 3:05-1758-MBS |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| Thrifty Car Rental (GSP Transportation, Inc.), | ) ) ) ) | **OPINION AND ORDER** |
| Defendant. | ) ) ) | |

Plaintiffs Gregory Culler, Kimberly Osborne, Angonetha Singleton, and Margaret Green brought this action against their former employer, Defendant GSP Transportation, Inc., on June 20, 2005, alleging that they had been discriminated on the basis of their race in contravention of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Plaintiffs also allege claims for breach of contract and breach of contract accompanied by a fraudulent act based on their alleged contracts of employment with Defendant.

This matter is before the court on motion for summary judgment filed by Defendant on June 6, 2006. Plaintiffs filed a memorandum in opposition on July 11, 2006, to which Defendant filed a reply on July 14, 2006. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Joseph R. McCrorey for pretrial handling. On February 27, 2006, the Magistrate Judge issued a Report and Recommendation in which he determined that Plaintiffs failed to make out prima facie cases of discrimination. The Magistrate Judge therefore recommended that Defendant's motion for summary judgment be granted. Plaintiffs

filed objections to the Report and Recommendation on March 16, 2007. Defendant filed a response to Plaintiffs' objections on March 22, 2007.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## I. FACTS

The facts are set forth in detail in the Report and Recommendation. Briefly, Plaintiffs, who are black, were employed by Defendant, a licensee of Thrifty Car Rental that operates automobile rental outlets in South Carolina. Culler originally was employed as a car technician. He was promoted in April 2003 to the position of Customer Service Representative (CSR) and worked at the Two Notch Road facility in Columbia. Culler was terminated in April 2004. There is no dispute that Culler was satisfactorily performing his job. According to Defendant, Culler was terminated after Defendant's president, Jeff Schoepfel, evaluated the sagging performance of the company as a whole and decided to reorganize the management structure. The reorganization resulted in a decision to eliminate Culler's full-time position on Two Notch Road. Culler's duties were assumed by a white female CSR who divided her time between the Two Notch Road and Charleston Highway locations.

2

Singleton was employed in August 2000 as a Location Manager in Sumter. She was terminated in June 2004. According to Defendant, Singleton was terminated because the grounds around her facility were not maintained, vehicles in her custody were damaged, and revenue was down at her location. Singleton's duties were shifted to a Shayla Perry, a Local Market Supervisor.

Osborne was employed as a Location Manager at the Charleston Highway facility in Columbia in March 2004. She was terminated in June 2004. According to Defendant, Osborne was terminated because the grounds around her facility were not properly maintained and revenues were poor at her location. Osborne's duties also were shifted to Ms. Perry.

Greene was employed in April 2004 as a CSR at the Columbia Airport in Columbia. She was terminated in May 2004. According to Defendant, Greene was terminated because she was rude and disrespectful to customers and other employees. Greene contends, however, that she was terminated because she had called in sick.

## II. DISCUSSION

A.    Title VII Claims

Plaintiffs alleges that they were discharged on account of their race, in contravention of 42 U.S.C. § 2000e-2. Section 2000e-2 provides that:

(a) It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . .

Plaintiffs bear the initial burden of establishing a prima facie case of discrimination. A Title VII plaintiff relying on indirect evidence must establish a prima facie case of discrimination by

showing that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class. <u>Miles v. Dell, Inc.</u>, 429 F.3d 480, 485 (4th Cir. 2005) (quoting <u>Hill v. Lockheed Martin Logistics Mgmt.</u>, 354 F.3d 277, 285 (4th Cir. 2004)).

Once Plaintiffs have established a prima facie case, a rebuttable presumption arises that Defendant unlawfully discriminated against Plaintiffs, and the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. <u>See</u> <u>Reeves v. Sanderson Plumbing Prod. Inc.</u>, 530 U.S. 133, 142 (2000) (citing <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981)). Defendant's burden is one of production, not persuasion; it can involve no credibility assessment. <u>See</u> <u>id.</u> (citing <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 509 (1993)). At this stage, the <u>McDonnell Douglas</u> framework, with its presumptions and burdens, disappears, and the sole remaining issue is discrimination vel non. <u>Reeves</u>, 530 U.S. at 143 (quoting <u>United States Postal Svc. Bd. v. Aikens</u>, 460 U.S. 711, 714 (1983)). Although intermediate evidentiary burdens shift back and forth under this framework, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" <u>Id.</u> (quoting <u>Burdine</u>, 450 U.S. at 253). Thus, Plaintiffs must prove by a preponderance of the evidence that the legitimate reasons offered by Defendant were not its true reasons, but were a pretext for discrimination. <u>See</u> <u>id.</u> (quoting <u>Burdine</u>, 450 U.S. at 253).

Plaintiffs contend the Magistrate Judge erred concluding that they failed to make out prima facie cases of discrimination. The court disagrees.

4

1.    Singleton and Osborne

The Magistrate Judge found that neither Singleton nor Osborne showed that their job performance was satisfactory at the time of their termination.  Plaintiffs contend the Magistrate Judge erred in making this determination because (1) Singleton was never told she was responsible for the upkeep of the grounds or for generating revenue, and (2) Osborne hired a cleaning crew and personally filed years of paperwork.  In addition, Plaintiffs contend that revenue declined at these locations because Defendant did not make available a sufficient number of vehicles for rental. However, Plaintiffs' own statistics indicate that fleet utilization at their locations was low.  A low fleet utilization percentage indicates that the supply of cars exceeds rental demand.  See Second Affidavit of Jeffrey J. Schoepfel, ¶ 4 (Entry 26-7).  Plaintiffs Singleton's and Osborne's self-serving statements that they performed satisfactorily fail to establish that they met Defendant's legitimate job expectations.  See Diamond v. Bea Maurer, Inc., 128 Fed. App'x 968, **4 (4th Cir. 2005) (self-serving affidavit insufficient to show job performance was satisfactory).

Even if the court were to consider that Singleton and Osborne made out a prima facie case, Plaintiffs fail to establish pretext.  In a wrongful discharge action, it is the perception of the decision-maker that is relevant, not the self-assessment of the plaintiff.  DeJarnette v. Corning Inc., 133 f3d 293, 299 (4th Cir. 1998) (citing Evans v. Techs. Applicications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996)).  Moreover, Defendant has presented evidence that Osborne's predecessor, a white male, also was terminated because he failed to maintain the grounds and because the location performed poorly.  Affidavit of Jeffrey J. Schoepfel, ¶ 19 (Entry 17-2).  Plaintiffs' objection is without merit.

5

2.    <u>Greene</u>

The Magistrate Judge accepted as true for purposes of summary judgment Greene's allegation that she was terminated by William "Rock" Burch because she called in sick. It appears from the record that Burch hired Greene and then terminated her approximately a month later. "[I]n cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." <u>Proud v. Stone</u>, 945 F.2d 796, 797 (4th Cir. 1991).

Greene contends that she was terminated in a manner that gives rise to discriminatory intent. According to Greene, she was not paid as well as two similarly-situated white employees, Jennifer and Laura Drew. The record demonstrates, however, that Greene was hired as a CSR at a salary of $8.00 per hour. Affidavit of Amy Watson ¶ 9 (Entry 17-3). Jennifer Drew was hired as a CSR at $8.00 per hour. Laura Drew was hired in a CSR position at $7.00 per hour. <u>See</u> Second Affidavit of Amy Watson ¶ 5 and Exhibit A thereto (Entry 26-9).

According to Defendant, in the year following Greene's termination, Defendant hired eight CSRs at the Columbia airport location. Of these eight, four were black. Three of these four individuals were women, one of whom eventually was promoted to the position of Location Manager. Affidavit of Amy Watson ¶10 (Entry 17-3). The record does not support a finding of discriminatory animus. Plaintiffs' objection is without merit.

3.    <u>Culler</u>

The Magistrate Judge determined that Culler did not make out a prima facie case because he did not show that he was replaced by someone outside the protected class. Plaintiffs assert that the

assumption of Cueller's duties by a white female, even on a part-time basis, satisfies this element of the test. The court disagrees that Cueller has made out a prima facie case, although for somewhat different reasons than articulated by the Magistrate Judge.

Cueller was among a group of employees discharged allegedly because of Defendant's economic difficulties. Thus, he was part of a reduction-in-force. "Employees at the time of a reduction-in-force are usually meeting the employer's performance expectations, and because there are reductions-in-force, the employees generally are not replaced. The question in this context is not why members of the group were discharged or whether they were meeting performance expectations, but whether the particular employees were selected for inclusion on the list for discharge because of their [race.]" Mitchell v. Data General Corp., 12 F.3d 1310, 1315 (4th Cir. 1993) (ADEA claim). In reduction-of-force cases, the fourth element of the familiar burden-shifting test may be satisfied by showing "that persons outside the protected class were retained in the same position or that there was some other evidence indicating that the employer did not treat [race] neutrally in deciding to dismiss the plaintiff." EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992).

In this case, Defendant avers that, in addition to Plaintiffs' terminations, nine white employees also were terminated as the result of Defendant's evaluation of the performance of the company. Affidavit of Jeffrey J. Schoepfel, ¶ 14 (Entry 17-2). Eventually the Two Notch Road location where Cueller worked was closed because the location was not profitable. Id. ¶ 12. The court discerns no evidence in the record to support a finding that Defendant did not treat race neutrally in deciding what positions to eliminate. Plaintiffs' objection is without merit.

* * *

While courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment is appropriate if the plaintiff cannot prevail as a matter of law. Evans v. Technologies Applications & Svc. Co., 80 F.3d 954, 959 (4th Cir. 1996). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896, F.2d 5, 8 (1st Cir. 1990). The court thoroughly has reviewed the record and concludes that Plaintiffs have not met their burden of demonstrating that Defendant intentionally discriminated against them. Defendant's motion for summary judgment as to Plaintiffs' Title VII claims is granted.

B.    Contract Claims

The Magistrate Judge determined that Plaintiffs' breach of contract claims should be dismissed because they did not show the existence of a contract. According to the Magistrate Judge, Plaintiffs, by arguing that they had oral agreements with Defendant regarding wages and compensation, abandoned any claim they may have asserted based upon an alteration of their at-will employment by Defendant's employee handbook. Plaintiffs now assert that they were terminated in violation of Defendant's employee handbook.

An individual working for an employer under a contract of employment for an indefinite period can be terminated at will. Williams v. Riedman, 529 S.E.2d 28, 32 (S.C. Ct. App. 2000) (citing Shealy v. Fowler, 188 S.E. 499 (S.C. 1936)). Termination of an at-will employee does not normally give rise to a cause of action for breach of contract. Id. (citing Hudson v. Zenith Engraving Co., 259 S.E.2d 812 (S.C. 1979)). However, when the at-will status of the employee is altered by

8

the terms of an employee handbook, thereby creating a contractual employment relationship, a cause of action for wrongful discharge may arise. Id. (citing Small v. Springs Industries, Inc., 357 S.E.2d 452 (S.C. 1987)).[1]

An employer may issue policies, manuals, or bulletins as purely advisory statements and may evince a desire to continue under the employment at will policy. An employer may accomplish this goal by inserting a conspicuous disclaimer or provision into the written document. Jones v. General Elec. Co., 503 S.E.2d 173, 178 (S.C. Ct. App. 1999) (quoting Small v. Springs Industries, Inc., 357 S.E.2d 452 , 454-55 (S.C. 1987)). A disclaimer is conspicuous when there is something about the provision that reasonably calls attention to it. Id. at 180 (quoting Hannah v. United Refrigerator Svcs., Inc., 430 S.E.2d 539 (S.C. Ct. App. 1993)). However, a disclaimer is merely one factor to consider in ascertaining whether a handbook conveys credible promises that should be enforced. A handbook that contains both promissory language and a disclaimer should be viewed as inherently ambiguous. Id.

In this case, Defendant's employee handbook provided:

**OUR COMPANY IS AN AT-WILL EMPLOYER. THIS MEANS THAT REGARDLESS OF ANY PROVISION IN THIS EMPLOYEE HANDBOOK, EITHER YOU OR THE COMPANY MAY TERMINATE THE EMPLOYMENT RELATIONSHIP AT ANY TIME, FOR ANY REASON, WITH OR WITHOUT CAUSE OR NOTICE. NOTHING IN THIS EMPLOYEE HANDBOOK OR IN ANY DOCUMENT OR STATEMENT, WRITTEN OR ORAL, SHALL LIMIT THE RIGHT TO TERMINATE EMPLOYMENT-AT-WILL. NO OFFICER, EMPLOYEE OR REPRE-SENTATIVE OF THE COMPANY IS AUTHORIZED TO ENTER INTO AN AGREEMENT – EXPRESS OR IMPLIED – WITH ANY EMPLOYEE FOR**

---

[1] The South Carolina Legislature recently passed a statute providing that employee handbooks issued after June 30, 2004 will not create an express or implied contract of employment if the handbook contains a conspicuous disclaimer, and the disclaimer is signed by the employee. S.C. Code Ann. § 41-1-110. Section 41-1-110 was not effective until after Plaintiffs were discharged.

**EMPLOYMENT OTHER THAN AT-WILL UNLESS THOSE AGREEMENTS ARE IN A WRITTEN CONTRACT SIGNED BY THE PRESIDENT OF THE COMPANY.**

(Entry 38.)

The Handbook further provides that "[d]isciplinary action may include a verbal warning, written warning, suspension and/or discharge. The appropriate disciplinary action imposed will be determined by the company. The company does not guarantee that one form of action will necessary precede another. . . . **Nothing in this policy is designed to modify our employment-at-will policy.**" Id.

Clearly, the Handbook provides for an at-will relationship between Defendant and Plaintiffs. The Handbook provides that any other agreements with employees must be in writing signed by the president of the company. In addition, the language regarding Defendant's disciplinary procedures is couched in permissive, rather than mandatory language. The court concludes that no reasonable jury could find that the Handbook created a contract of employment. Defendant's motion for summary judgment is granted as to this issue.

### III. CONCLUSION

For the reasons stated, the court adopts the recommendation of the Magistrate Judge. Defendant's motion for summary judgment is granted. To the extent Plaintiffs allege that all the issues raised in their complaint were not addressed on summary judgment, the court concludes that any such issues are vague and unspecified and fail to state a cognizable claim. Accordingly, any

remaining allegations of the complaint are dismissed, with prejudice.

   **IT IS SO ORDERED**.

                                        /s/ Margaret B. Seymour
                                        United States District Judge

Columbia, South Carolina

March 30, 2007.